146 So. 322

**STATE ex rel. PORTERIE, Atty. Gen., v. VIOLET OIL CO.**

No. 32196.

Jan. 30, 1933.

Gaston L. Porterie, Atty. Gen., Peyton R. Sandoz, and Justin C. Daspit, Sp. Asst. Attys. Gen., J. K. Gaudet, of Gretna, and Lloyd J. Cobb, of New Orleans, for relator.

S. J. Tennant, Jr., and E. L. Bordelon, both of New Orleans, for respondent.

OVERTON, J.

On January 4, 1933, the state of Louisiana and Miss Alice Lee Grosjean, supervisor of public accounts, upon the relation of the Attorney General of the state, brought suit to recover of defendant $500 for a tax, with 20 per cent. penalty thereon, and 10 per cent. attorney's fees, alleged to be due upon a certain tank of gasoline, brought by the Violet Oil Company into the state from the state of Texas.

The tank, it is alleged, reached its destination in this state on or about January 1, 1933, and it is also alleged that its contents were unloaded into defendant's storage tanks, without the payment of the tax, and without the posting of a bond securing the payment of the tax and penalties. The petition also contains the following allegation:

"Petitioner further avers that having failed to pay the tax on the aforesaid gasoline and having failed and refused to furnish adequate bond to secure the state of Louisiana the amount of said tax, plus the penalty and attorney's fees, the defendant by its aforesaid conduct and under the provisions of section 4 of Act No. 6 of 1928 (Ex. Sess.), as amended by Act No. 8 of 1930, § 1, and by section 4 of Act No. 1 of 1930 (Ex. Sess.), is to be construed as attempting to avoid the payment of said taxes, penalty and attorney's fees, and such conduct constitutes sufficient ground for an attachment of defendant's gasoline or motor fuel, wherever the same may be located or found, whether said gasoline or motor fuel is in the possession of the defendant corporation or in the possession of any other person, firm, corporation, or association of persons."

The judge below refused to grant an order for the attachment to issue, because the order is not authorized by law; because the

remedy sought by plaintiff is of such a nature as to subject defendant to irreparable injury since the state is not compelled to furnish bond to obtain an attachment; because the claim of the state is indefinite, in that it is alleged that the tank car is one of approximately 10,000 gallons, on which the tax of 5 cents a gallon, fixed by law, is computed, showing the tax to be $500 on that indefinite quantity; because the affidavit attached to the petition, which was made by an assistant to the supervisor of public accounts, which reads, substantially, that he, affiant, verily believes the facts and allegations contained in the petition to be true and correct, is too uncertain in connection with the amount alleged to enable defendant to pay the amount of the claim; and because the proper remedy is for the court to issue a rule on defendant to show cause why an attachment should not issue, instead of issuing an order ex parte for the attachment.

The attachment asked for, in a case such as the present, where gasoline is brought into the state for sale therein, without either paying the tax thereon or furnishing bond for its payment, is fully authorized by section 4 of Act No. 1 of 1930 (Ex. Sess.). This act is now a part of the Constitution. In the section cited, it is provided: "That failure to pay any tax, penalties or costs accruing under this Article or failing to furnish bonds as provided in this Article [referring to the entire act as a proposed constitutional amendment], shall ipso facto make the said tax, penalties and costs delinquent and shall be construed as an attempt to avoid the payment of same which shall be sufficient grounds for attachment of gasoline, * * *

wherever the same may be located or found, whether said delinquent taxpayer be a resident or non-resident of this State, * * * and authority to attach is hereby specifically authorized and granted to the said Supervisor of Public Accounts. The procedure prescribed by law shall be followed except that no bond shall be required of the State." This provision was held to authorize an attachment in State v. Tri-State Transit Co., 173 La. 682, 138 So. 507.

The fact that the state is expressly exempted from furnishing a bond to procure the attachment, by the quoted provision, affords no reason whatever to deny the writ, but, to the contrary, the exemption necessarily confers clear authority to order it to issue.

The claim of the state, as to the amount for which the writ is asked to safeguard as due, is not uncertain or indefinite, but is for the precise sum of $500, with 20 per cent. penalty, and 10 per cent. attorney's fee on the principal and penalty. The fact that the amount of gasoline brought into the state in the tank car is estimated in order to fix the amount of the tax does not make the amount of the tax, claimed or demanded, indefinite, although it may weaken the correctness of the amount claimed. There is here, we think, a substantial compliance with article 243 of the Code of Practice. Flower v. Griffith's Heirs, 12 La. 345; Belden v. Read & Hunt, 27 La. Ann. 103.

The affidavit for the writ, which declares that affiant, an assistant to the supervisor of public accounts, verily believes all of the facts and allegations of the petition to be true, the petition setting forth the necessary

facts for an attachment, which the affidavit shows the affiant read and therefore had knowledge of, suffices. The state, of necessity, must act through its officers and agents, and, an officer being in the position of an agent, it is sufficient that the officer swear to the best of his belief, instead of positively, to the existence of the debt. Cf. Schneider v. Vercker, 11 La. Ann. 274; Code of Practice, arts. 216 and 217.

■ The view of the respondent judge, which may be said also to be the contention of the respondent corporation, that the proper course for the judge to pursue, in a case such as the present, is to issue a rule nisi to determine whether or not he should grant the order for the attachment, after a hearing had, does not appeal to us as correct. Such a course, in our opinion, is contrary to, and tends to destroy, the main purpose in authorizing attachments; namely, to protect a claimant from the fraudulent disposition of his debtor's property.

Section 4 of Act No. 1 of 1930 (Ex. Sess.) in referring to the power granted to attach, in such cases as the present, provides that: *"The procedure prescribed by law shall be followed* except that no bond shall be required of the State." (Italics ours.) We know of no law, and are cited to none, sanctioning the issuance of a rule nisi, prior to granting an order for a writ of attachment, but consider such procedure contrary to the very nature and purpose of an attachment. When a petition for an attachment is presented to a judge, upon his finding that the application, upon its face, entitles the applicant to the writ, he must grant it, and, this, without issuing a rule nisi. Uncle Sam

Planting & Manufacturing Co. v. Reynaud, 157 La. 955, 103 So. 276; 6 C. J. 102, § 148 D. If he finds that the application does not entitle the applicant to the writ, he must refuse it without issuing a rule. He has no discretion in the matter.

The ruling, in State, etc., v. Violet Oil Co., Inc., (not for publication), where an application in a case similar to the present one for writs of certiorari and mandamus was refused, contains nothing contrary to the views here expressed. The question here presented was not decided one way or another there, for the reason that the court could not grant timely relief. The refusal reads as follows: "Writ refused, the judge having fixed the rule for December 12, 1932, the court could grant no timely relief. See, however, State v. Tri-State Transit Co., 173 La. 682, 138 So. 507. Right reserved to state to renew application, if writ is ever refused."

■ The respondent corporation urges, which is omitted from the answer of the respondent judge, that plaintiff is not entitled to the order for the attachment, because the prayer for the attachment is for the writ to issue, not only to seize the particular gasoline brought into the state, but any other gasoline in the hands of defendant. The contention of this respondent is that the law authorizes the attachment for the sole purpose of seizing the gasoline upon which the tax is due, for the reason that section 4 of Act No. 1 of 1930 (Ex. Sess.) provides in the same connection in which the right to attach is given, "That it is the intention of this Article to make the gasoline, benzine, naptha or other motor fuel responsible for the payment of this tax, together with penalties and costs, and authority to attach is hereby spe-

cifically authorized and granted to the said Supervisor of Public Accounts."

The quoted provision might be construed as granting a privilege to secure the tax on the particular motor fuel brought into the state; but in view of the fact that the reason for authorizing an attachment is to obtain the money due the state, and in view of the fact that attachments issue, under the general law, to seize any property subject to seizure belonging to the defendant, it would be too restrictive a construction to hold that, contrary to the general rule, the fuel for which a tax is due alone may be attached, without reference to the sufficiency of what may remain of the fuel to satisfy the tax, penalties, and costs.

■ In its answer to the rule nisi, issued by this court herein, the respondent corporation has taken a position in direct conflict with the allegations of plaintiff's petition for attachment, and has affixed to the answer documentary evidence, forming no part of the record, the purpose of which is to show, in this court, that the tax claimed by the state is less than what the state claims that it is, and that payment was tendered (apparently, it may be observed, by private check) to pay the tax admitted to be due, without penalties and costs. Such an issue as this may be presented only in the lower court, which is a court of original jurisdiction, by motion to dissolve the attachment or on the merits, and not in this court, which, with the exception of a few isolated exceptions, of which this is not one, is a court of appellate jurisdiction. The issue has no place here, nor has it any place in the lower court, prior to the issuance of the attachment. Const. 1921, art. 7, §§ 10 and 35.

■ As plaintiff's application for an attachment is sufficient upon its face to call for the issuance of the writ, and since, being sufficient, the respondent judge has no discretion to refuse the writ, the writ of mandamus prayed for should issue and be made peremptory. State ex rel. People's State Bank v. Police Jury, 154 La. 389, 97 So. 584; State ex rel. Martin v. Bailey, Secretary of State, 168 La. 688, 123 So. 125.

The writ of mandamus prayed for is hereby granted, and is made peremptory, and accordingly the respondent judge is ordered to grant the writ of attachment sued for.

O'NIELL, C. J., dissents.

ST. PAUL, J., absent on account of illness, takes no part.

O'NIELL, C. J. (dissenting).

There is no doubt that the supervisor of public accounts has the right to obtain a writ of attachment to enforce the payment of the gasoline tax, under section 4 of Act No. 6 of 1928, as amended by section 4 of Act No. 1 of the Extra Session of 1930. Ordinarily it is the duty of the district judge to issue the writ of attachment upon a prima facie showing by the supervisor of public accounts that a delinquent taxpayer is attempting to avoid the payment of the tax. But, under the facts and circumstances of this case, the judge, in my humble opinion, was justified in exercising his own judgment and using some discretion in the matter. The facts which I refer to are shown by the return made by the district judge, and by that of the defendant, Violet Oil Company, in response to the rule to show cause, issued by this court. The

facts are shown mainly by an official document, or letter, sent by the so-called "Office Attorney" for the supervisor of public accounts, to the Violet Oil Company, on the 6th of January, 1933; the day on which this court issued the rule to show cause. The tank car of gasoline, containing 8,122 gallons, and subject to a tax of $393.92, was received by the defendant on the 2d of January, 1933. On the next day, and before running the gasoline into the company's storage tank, the company offered to pay the $393.92 at the New Orleans office of the supervisor of public accounts, and was there directed to make the remittance to the Baton Rouge office. The check for $393.92, which is admitted to be the correct amount of the tax, was deposited in the mail, in a registered letter, at Arabie Post Office, near the Violet Oil Company's establishment, and near New Orleans. The registered letter was addressed, of course, to the supervisor of public accounts, at Baton Rouge. The letter and check were mailed on the morning of the 4th of January. It was on that afternoon that the attorneys for the supervisor of public accounts presented to the district judge their petition for a writ of attachment to collect $500, plus 20 per cent. penalty and 10 per cent. attorneys' fees, on the allegation, which it is conceded was an error, that the tank car contained 10,000 gallons of gasoline. The judge declined to sign the ex parte order for an attachment, which the attorneys for the plaintiff had prepared for his signature; but he offered to issue a rule on the Violet Oil Company to show cause why a writ of attachment should not be issued. That method of procedure would have brought out the fact that the amount of the tax due was only $393.92, and not $500, plus 20 per cent. penalty and 10 per cent. attorneys' fees, as claimed in the petition; and the state would have been protected, because the check for the full amount of the tax was already on its way, by registered mail, to the supervisor of public accounts. The check arrived in the office of the supervisor of public accounts, in Baton Rouge, on the 5th of January; the day on which the petition for a writ of mandamus was filed in the Supreme Court. The office attorney for the supervisor of public accounts returned the check for $393.92 to the Violet Oil Company, in a letter dated the 6th of January, in which the attorney demanded, in addition to the tax of $393.92, a penalty of $78.78, an attorney's fee of $47.27, and an inspection fee of $2.53, making the total demand $522.50, plus the costs of court. Even that amount is not as large as the sum for which the district judge is being mandamused now to issue a writ of attachment.

It does not seem to me to be just that the defendant should be condemned to pay heavy penalties for failing to comply with an excessive and unjust demand, when defendant was willing to pay promptly, and was in fact paying promptly, the full amount of the tax that was due.

For these reasons I respectfully decline to subscribe to the prevailing opinion or decree in this case.